Danny JOUBERT, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–01–237–CR.

Court of Appeals of Texas,
Waco.

Jan. 21, 2004.

Kerri K. Anderson–Donica, Law Office of Kerri K. Anderson–Donica, Corsicana, for appellant.

Patrick C. Batchelor, Navarro County Dist. Atty., Corsicana, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.*

## OPINION

TOM GRAY, Chief Justice.

Danny Joubert pled guilty to the offense of possession of a controlled substance after the trial court denied his motion to suppress. He was sentenced to one year in a state jail facility. Joubert appeals the denial of his motion to suppress. We affirm.

### BACKGROUND

Officer Sean Ritter was on patrol one summer night and noticed Joubert's vehicle in a private driveway off Interstate 45. Ritter's interest in the vehicle was elevated because it was located in an area known to him to be an area where trash was frequently dumped. When Ritter turned his patrol unit around to investigate, Joubert proceeded out of the driveway. It appeared to Ritter that Joubert did not stop before entering the roadway. Ritter believed that, by failing to stop before entering the roadway, Joubert had committed a traffic offense. He stopped Joubert's vehicle. After obtaining consent to search the vehicle, Ritter located drug paraphernalia and a container of crack cocaine.

Joubert asked the trial court to suppress the cocaine evidence because he claimed the stop made was illegal. After hearing

testimony from Ritter, the trial court denied Joubert's motion.

### MOTION TO SUPPRESS

On appeal, Joubert contends the trial court erred in denying his motion to suppress. He cites three reasons to support this contention: (1) his vehicle was not in a suspicious place; (2) he did not commit a traffic offense; and (3) the stop did not encompass the community caretaking function of law enforcement. Because the trial court focused its holding on the second contention, we will begin our review there as well.

A trial court's denial of a motion to suppress is reviewed for abuse of discretion. *Oles v. State,* 993 S.W.2d 103, 106 (Tex.Crim.App.1999). The trial court's findings of fact are given "almost total deference," and in the absence of explicit findings, the appellate court assumes the trial court made implicit findings which were supported in the record. *Carmouche v. State,* 10 S.W.3d 323, 327–28 (Tex.Crim. App.2000); *Guzman v. State,* 955 S.W.2d 85, 89–90 (Tex.Crim.App.1997). The application of relevant law, including search and seizure law, is reviewed de novo. *Id.*

### APPLICABLE LAW

The Fourth Amendment does not forbid all seizures, just unreasonable seizures. *See Rhodes v. State,* 945 S.W.2d 115, 117 (Tex.Crim.App.1997). A police officer is generally justified in briefly detaining an individual on less than probable cause for the purposes of investigating possible criminal behavior where the officer can point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably

* This case was submitted with former Chief Justice Davis on the panel, but he resigned effective August 4, 2003. *See* Tex.R.App. P. 41.1(c). Justice Reyna, who took the oath of office on January 5, 2004, participated in the decision of the court.

warrant the intrusion. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Carmouche*, 10 S.W.3d at 328. That is, the officer must show reasonable suspicion that the individual is connected to criminal activity. *State v. Larue*, 28 S.W.3d 549, 553 n. 8 (Tex.Crim.App.2000). This standard is an objective one: there need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim. App.2001). The same standards apply whether the person detained is a pedestrian or is the occupant of an automobile. *Carmouche*, 10 S.W.3d at 328.

*Traffic Stop*

■■■ The reasonableness of a traffic stop must be examined in terms of the totality of the circumstances. *Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App. 1997); *Garcia v. State*, 967 S.W.2d 902, 904 (Tex.App.-Austin 1998, no pet.). "[W]hen used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person ..." *Woods*, 956 S.W.2d at 37–8 (quoting *U.S. v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). Proof of the actual commission of a traffic offense is not a prerequisite to the legality of a stop. *Drago v. State*, 553 S.W.2d 375, 377 (Tex.Crim.App.1977).

*The Evidence*

At the motion to suppress hearing, Sean Ritter, a former police officer for the City of Rice, Texas, testified that he patrolled the town for the police department on July 7, 2000. At 10 p.m. on that date, he and a reserve officer were traveling south on the southbound service road of Interstate 45. His attention was drawn to a vehicle sitting in a driveway off the northbound service road in which people had been known to conduct activities such as dumping trash and urinating in public. The drive was a small, semi-circular private drive. The drive had been part of a gas station but the building was no longer there. Ritter suspected that the occupant of the vehicle was there to dump trash or urinate or had fallen asleep or had health problems. While Ritter turned around to investigate, the vehicle came out of the drive and proceeded north on the northbound service road. Ritter noticed that the vehicle did not appear to stop before entering the service road. Ritter believed a traffic violation of failing to stop while exiting a private drive had been committed. He caught up with the vehicle and pulled it over to investigate its purpose for being in the drive and for not stopping before exiting the drive.

Section 545.256 of the Transportation Code provides:

An operator emerging from an alley, driveway, or building in a business or residence district shall:

(1) stop the vehicle before moving on a sidewalk or the sidewalk area extending across an alley or driveway;

(2) yield the right-of-way to a pedestrian to avoid collision; and

(3) on entering the roadway, yield the right of way to an approaching vehicle.

TEX. TRANS. CODE ANN. § 545.256 (Vernon 1999). Ritter acknowledged on cross-examination that the driveway did not cross a sidewalk. He further testified that although the business establishment was no longer there, a business named "Plantation Farms" was further off the road and the surrounding property was owned by Plantation Farms. He acknowledged that there were no buildings on the frontage road except for a residence a half mile away. Ritter stated that he had no idea

whether the area with the driveway was a business or residential district. He stated, however, that he believed the area was in a business district because of Plantation Farms. When confronted with the definition of a business district, Ritter agreed that the area where Joubert was stopped did not meet the definition of a business district.[1] *See* TEX. TRANS. CODE ANN. § 541.102(1) (Vernon 1999).

*APPLICATION*

■ The trial court denied Joubert's motion to suppress and found that the officer's conduct in stopping Joubert's vehicle was reasonable in light of the circumstances, even if the stop was made in the mistaken but good faith belief that Joubert had committed a traffic violation. Ritter testified that he saw Joubert's vehicle in an area notorious for trash dumping. By the time Ritter turned around to investigate, Joubert drove off. It appeared to Ritter that Joubert did not stop before exiting the driveway and entering the service road. The driveway had been a part of a gas station, but the building was no longer on the property. Plantation Farms was a business in the vicinity further off the service road. A rational inference from these facts is that Joubert failed to stop when exiting a private drive from a business district. Joubert contends that because Ritter agreed that no sidewalk was present and that the area did not fit the definition of a business district, an actual offense did not occur and therefore, the stop was unreasonable. That is not the law. As stated previously, proof of the actual commission of the offense is not required. Our concern is whether the specific, articulable facts, together with rational inferences, reasonably warranted the intrusion of the stop. In this case, based on the totality of the circumstances, the stop is not rendered unreasonable simply because no sidewalk existed or because the area was not an actual business district as defined by the Transportation Code. Ritter had reasonable suspicion to believe Joubert had committed a traffic offense. Thus, the stop was not illegal, and the trial court did not err in denying Joubert's motion to suppress.

## CONCLUSION

Having upheld the trial court's decision on one ground raised by Joubert, we need not address Joubert's remaining contentions in support of his first issue. Thus, his issue is overruled, and the trial court's judgment is affirmed.

Justice BILL VANCE concurring.

BILL VANCE, Justice, concurring.

The record does not demonstrate that Officer Ritter had a reasonable belief that Joubert had committed a traffic violation. However, because he consented to the search, I join in affirming the judgment.

I would find the stop to be illegal. The question then becomes whether Joubert's consent purged the contamination from the illegal stop, *i.e.*, whether the taint from the stop was attenuated by the consent. *Herrera v. State*, 80 S.W.3d 283, 289 (Tex. App.-Texarkana 2002, pet. ref'd); *see also Sims v. State*, 84 S.W.3d 805, 810 (Tex. App.-Houston [1st Dist.] 2002, no pet.) (at-

1. A business district is the territory adjacent to and including a highway if buildings used for business or industrial purposes, including a building used as a hotel, bank, office building, public building, or railroad station:
(A) are located within a 600–foot segment along the highway; and

(B) within that segment the buildings occupy at least 300 feet of frontage:
   (i) on one side of the highway; or
   (ii) collectively on both sides of the highway.

tenuation doctrine applies to art. 38.23). The Court of Criminal Appeals has devised the following set of factors to be used in the attenuation analysis in a consent-to-search case:

1.  The proximity of the consent to the illegal police conduct and what occurred in that time period.

2.  Whether the illegal conduct brought about police observation of the particular object which they sought consent to search.

3.  Whether the illegal conduct was "flagrant police misconduct."

4.  Whether the consent was volunteered rather than requested by the detaining officers.

5.  Whether the arrestee was made fully aware of the fact that he could decline to consent and thus prevent an immediate search.

6.  Whether the police purpose underlying the illegal conduct was to obtain the consent.

See *Boyle v. State*, 820 S.W.2d 122, 131–32 (Tex.Crim.App.1989); *Herrera*, 80 S.W.3d at 289 (citing *Boyle*). Applying the factors to this case:

1.  Consent was given very soon after the illegal stop, and there were no intervening events to purge the taint. This factor weighs in Joubert's favor.

2.  Although the stop brought about Ritter's observation of the inside of the vehicle, the contraband was found in a partially open bag in plain view. We cannot say this factor weighs in either side's favor.

3.  The stop, while misguided, was not flagrant police misconduct. This factor weighs in the State's favor.

4.  Consent was not volunteered but rather came at Ritter's request.

This factor weighs in Joubert's favor.

5.  Joubert was not given his *Miranda* rights or otherwise informed of his right to deny consent. This factor weighs in Joubert's favor.

6.  The record does not show that the stop had the underlying purpose of searching the vehicle. This factor weighs in the State's favor.

Joubert was illegally stopped late at night, not informed of his *Miranda* rights, asked to consent to a search, and afforded little time to reflect. However, he freely gave consent (a) under circumstances not tainted by flagrant police misconduct or coercion and (b) to a simple request for a search after the officer learned he had stopped a driver with no license and a criminal history. While some *Boyle* factors favor each side, after weighing the factors under these circumstances, I conclude that the taint was attenuated by the consent.

Because the taint from an illegal stop was attenuated by Joubert's consent, I join in affirming the judgment.