**Heath Lamont JOHNSON, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 10–06–00179–CR.**

Court of Appeals of Texas, Waco.

Aug. 31, 2007.

Rehearing Overruled Nov. 6, 2007.

Stan Schwieger, Waco, for appellant.

Kathryn J. Gilliam, Falls County Dist. Atty., Marlin, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Heath Lamont Johnson pleaded guilty to possession of less than one gram of cocaine and was sentenced to eight months' confinement in a state jail. He contends in his sole issue that the court abused its discretion by denying his motion to suppress evidence found in the search of his car. We will affirm.

We review a suppression ruling under an abuse-of-discretion standard. *See Montanez v. State,* 195 S.W.3d 101, 108 (Tex.Crim.App.2006). We afford almost total deference to the court's determination of historical facts but review *de novo* the court's ruling on mixed questions of law and fact which do not turn on the credibility and demeanor of witnesses. Id. at 106. We apply a *de novo* standard of review in this case because the pertinent facts are not disputed and because the only issue to be determined is whether the trial court correctly applied the law to those facts. *See Oles v. State,* 993 S.W.2d 103, 106 (Tex.Crim.App.1999); *Mitchell v. State,* 187 S.W.3d 113, 116 (Tex.App.-Waco 2006, pet. ref'd).

DPS Trooper Jeffrey Wachtendorf testified that he stopped Johnson's car because the car had "one-way tint on the bottom portion of the windows." He ex-plained that the tinting was "mirrored, or one way, to where you cannot see in." Wachtendorf testified that he relied on the window tinting guidelines in his 2002 DPS training manual to determine that Johnson's window tinting violated the law. The State offered in evidence a portion of those guidelines, which provide in pertinent part:

> One-way glass may not be used in any window, interior partition, or aperture created for window purposes in a passenger automobile, station wagon, or taxicab.

Because this provision was superseded in 2004 and is inconsistent with the current statute governing window tinting, Johnson argues that Wachtendorf lacked reasonable suspicion to stop him on the occasion in question because of his mistaken understanding of the applicable traffic laws.

The provision which Wachtendorf relied on was promulgated pursuant to section 574.101 of the Transportation Code which authorizes DPS to "adopt standards for vehicle equipment" consistent with applicable state and federal law. *See* 25 Tex. Reg. 10675, 10676 (2000), *adopted* 26 Tex. Reg. 1163 (2001), *amended by* 29 Tex. Reg. 2261, *adopted* 29 Tex. Reg. 6724 (2004) (former 37 Tex. Admin. Code § 21.1(b)(1)(B)) (Tex. Dep't of Pub. Safety); *see also* Tex. Transp. Code Ann. § 547.101 (Vernon 1999).

The Texas Legislature first enacted legislation governing "sunscreening devices" for motor vehicles in 1987. Former article 6701d, section 134C(b) prohibited a person from operating a motor vehicle with "any object or material" placed on the windshield or a window "so as to obstruct or reduce the driver's clear view." Act of May 21, 1987, 70th Leg., R.S., ch. 235, § 1, 1987 Tex. Gen. Laws 1538, 1539 (repealed 1995) (current version at Tex. Transp. Code Ann. § 574.613(a)(1) (Vernon Supp.2006)).

Subsection (d) of the statute then excluded among other things:

(1) a windshield that has a sunscreening device that:

(A) has a light transmission of not less than thirty-three (33) percent; and

(B) has a luminous reflectance of not more than thirty-five (35) percent;

(2) a front side wing vent or window that has a sunscreening device that has a light transmission of not less than thirty-five (35) percent and a luminous reflectance of not more than thirty-five (35) percent; and

(3) a side window to the rear of the driver, or a rear window, that has a sunscreening device that has a luminous reflectance of not more than thirty-five (35) percent and a light transmission of not less than thirty-five (35) percent.

*Id.* (current version at TEX. TRANSP. CODE ANN. § 547.613(b)(1), (2) (Vernon Supp. 2006)).

The Legislature carried these exclusions forward without substantive change in the Transportation Code. *See* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, sec. 547.613(b), 1995 Tex. Gen. Laws 1025, 1670–71 (amended 2003) (current version at TEX. TRANSP. CODE ANN. § 547.613(b)). The 2003 amendments primarily changed the requisite acceptable percentages for light transmission and luminous reflectance such that a windshield or window is acceptable if it permits "a light transmission of 25 percent or more" and has "a luminous reflection of 25 percent or less." Act of May 10, 2003, 78th Leg., R.S., ch. 136, § 1, 2003 Tex. Gen. Laws 184, 184–85 (codified at TEX. TRANSP. CODE ANN. § 547.613(b)(1), (2)).

DPS significantly amended title 37, section 21.1 of the Texas Administrative Code in response to the 2003 amendments to section 547.613(b). *See* 29 Tex. Reg. 2261, 2262–63 (2004), *adopted* 29 Tex. Reg. 6724 (2004) (codified at 37 TEX. ADMIN. CODE § 21.1(f)(2), (3)) (Tex. Dep't of Pub. Safety). The amendments to section 21.1 restructured the applicable requirements primarily by: (1) differentiating between original equipment and "[a]fter-market sunscreening devices"; (2) requiring generally that original windshields and windows "have a 70% light transmittance value"; (3) requiring that windshields have no after-market sunscreening devices "below the AS–1 line, or five inches from the top of the windshield if the AS–1 line annotation is not present"; (4) requiring that side windows for passenger vehicles with after-market sunscreening devices "have at least a 25% light transmittance value and luminous reflectance of 25% or less, over the entire surface area of the window" and (5) requiring that rear windows "have a 25% light transmittance value" for all but "the topmost portion of the rear window, as with the windshield" and "a luminous reflectance of 25% or less." 37 TEX. ADMIN. CODE § 21.1(f)(2), (3).

▮ An officer may stop a driver when the officer has reasonable suspicion to believe the driver is committing a traffic offense. *See Brother v. State,* 166 S.W.3d 255, 257–60 (Tex.Crim.App.2005); *Mitchell,* 187 S.W.3d at 116.

Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. A reasonable-suspicion determination is

made by considering the totality of the circumstances.

*Ford v. State,* 158 S.W.3d 488, 492–93 (Tex.Crim.App.2005) (footnotes omitted).

█ Although an objective standard applies, reasonable suspicion cannot be grounded in an officer's mistaken understanding of the law. *See United States v. Granado,* 302 F.3d 421, 423 (5th Cir.2002); *United States v. Lopez–Soto,* 205 F.3d 1101, 1106 (9th Cir.2000); *Goudeau v. State,* 209 S.W.3d 713, 716 (Tex.App.-Houston [14th Dist.] 2006, no pet.). However, an officer's mistaken understanding of the law will not necessarily render the stop unreasonable. *United States v. Delfin–Colina,* 464 F.3d 392, 399 (3d Cir. 2006); *Goudeau,* 209 S.W.3d at 717. "The dispositive question is, therefore, considering the facts available to the officer during the investigative stop, would a reasonable officer, or one who was correctly interpreting the law, have had reasonable suspicion to initiate the stop?" *Goudeau,* 209 S.W.3d at 717; *accord Delfin–Colina,* 464 F.3d at 399 ("where an objective review of the record evidence establishes reasonable grounds to conclude that the stopped individual has in fact violated the traffic-code provision cited by the officer, the stop is constitutional even if the officer is mistaken about the scope of activities actually proscribed").

Here, Trooper Wachtendorf testified that he stopped Johnson because he believed that the "one-way tint on the bottom portion of the windows" violated section 547.613 of the Transportation Code. He further testified that he "could see [his] reflection" in the window tinting but he could not see through it.

Wachtendorf relied on an outdated DPS regulation to determine whether Johnson's window tinting was illegal. Nevertheless, under the totality of the circumstances, an officer "who was correctly interpreting the law" would have had reasonable suspicion to conclude that the window tinting did not comply with current law. As Wachtendorf explained, the "bottom quarter" of the side windows and the rear windshield had "mirrored" tinting, and he could not see through it. Under the totality of the circumstances, an officer "who was correctly interpreting the law" could have reasonable believed that this "mirrored" tinting was an "after-market sunscreening device" which did not "have at least a 25% light transmittance value." *See* TEX. TRANSP. CODE ANN. § 547.613(b)(2)(A); 37 TEX. ADMIN. CODE § 21.1(f)(3)(C)(i); *see also Burleson v. State,* No. 03–00–235–CR, 2001 WL 578287, at *2 (Tex.App.-Austin May 31, 2001, pet. ref'd) (not designated for publication); *DeLeon v. State,* 985 S.W.2d 117, 121 (Tex.App.-San Antonio 1998, pet. ref'd).

Accordingly, we overrule Johnson's sole issue and affirm the judgment.

Chief Justice GRAY concurs in the judgment with only a note: "A portion of the majority's discussion is inconsistent with a prior holding of this Court. *See Joubert v. State,* 129 S.W.3d 686 (Tex.App.-Waco 2004, no pet.). Application of *Joubert* to the facts presented in this appeal would result in the same judgment."