In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-12-00272-CR

**CURTIS ALLEN KIRKLAND, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 9th District Court
Montgomery County, Texas
Trial Cause No. 11-10-11344 CR**

## OPINION

A jury found Curtis Allen Kirkland guilty of possession of a controlled substance with intent to deliver. Kirkland pleaded true to the enhancement allegations. He was sentenced to seventy years in prison. In two issues, Kirkland argues that the officers lacked reasonable suspicion to make a traffic stop, and that the State failed to establish the reliability of a testing device, a window-tint meter.

The trial court reasonably concluded that information provided to the detaining officers from a narcotics investigation was sufficient to justify the

1

investigatory stop. After the stop was made, further detention was reasonable because of the results of the initial investigation. Evidence concerning the use of a tint meter does not require a new trial. The judgment of the trial court is affirmed.

THE STOP

Officer Greg Green with the Houston Police Department testified he was working with other narcotics officers in conducting surveillance. Approximately eight to ten officers were on the investigation. Methamphetamine dealers were selling drugs to smaller dealers at a Houston-area gas station. The officers were "sitting on the main runner that delivers the dope." Kirkland got out of a brown Ford Explorer and into the passenger seat of a Ford Ranger that had pulled into the same gas station. According to Officer Green, Kirkland was in the Ranger approximately thirty seconds to one minute, the amount of time it typically takes to complete a drug transaction. Kirkland got back into the Explorer, and the Ranger left. Officer Green followed the Explorer. He testified that, because the investigation was long-term, he wanted to allow the buyer, before being stopped, to get away from the scene of the surveillance. Officer Green testified that "[t]he transaction itself is enough probable cause but Montgomery County, they like to get their own probable cause as well." HPD narcotics division notified Deputy

2

Brian Dunn that "there was a Ford Explorer coming his way and that we needed him to get probable cause on the vehicle and get it stopped . . . ."

Deputy Scott Martin testified he and his partner, Deputy Dunn, drove towards Highway 59 and, about thirty to forty-five minutes after Dunn received the call, they stopped a brown Explorer with the same license plate number provided by the HPD narcotics division. Deputy Martin testified that, based on a belief that the vehicle's window tint violated Texas law, they stopped the vehicle. As Deputy Martin approached the vehicle, Kirkland appeared to be extremely nervous and under the influence. Kirkland's demeanor and the appearance of his arms were consistent with recent methamphetamine use. Martin questioned Kirkland while Dunn interviewed the two passengers. The individuals' stories were not consistent.

One of the women, who appeared to be under the influence during the stop, admitted to Martin that she had methamphetamines inside her pants and that Kirkland told her to place the drugs there. The other woman testified at trial that Kirkland told her he needed to go get more drugs because he had sold all his drugs and needed more. According to her, Kirkland obtained the drugs that were recovered during the stop from an individual in a truck at the Houston gas station.

Dunn observed a bag of crystallized substance that appeared to be methamphetamines in plain view on the vehicle's floorboard. Dunn told Martin

about the substance, and they took all three individuals into custody. Methamphetamines weighing 13.57 grams and 27.78 grams were recovered during the stop. Kirkland had $888 in his wallet that he said belonged to his mother. Deputy Martin testified that, based on the amount of methamphetamines recovered and the amount of money in Kirkland's wallet, Martin believed the money had been made through the sale of narcotics. When Deputy Martin tested the window tint, he determined the tint was legal.

While the deputies searched the vehicle, Kirkland was argumentative and kept insisting, "That's not my dope. That's not my dope." Once in custody and in the police vehicle, Kirkland cursed, and told the women to claim the drugs. Kirkland told the women he would provide for their bonds and pay their "lawyer fees."

REASONABLE SUSPICION

In reviewing a trial court's ruling on a motion to suppress, an appellate court gives almost total deference to a trial court's determination of historical facts, but reviews *de novo* the trial court's application of the law to those facts. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000) (citing *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997)). The trial court's ruling will be affirmed if it is reasonably supported by the record and is correct under any theory

4

of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009). Whether reasonable suspicion existed here is a mixed question of law and fact subject to *de novo* review. *See Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012).

Kirkland argues that the window-tint assertion was a pretext to stop. Noting that the window tint was determined to be legal, he argues that the basis for the stop was objectively unreasonable. The State maintains Kirkland did not preserve the alleged error for review on appeal. But the trial court ruled on the motion to suppress, though late in the trial. The record reflects the trial court treated the motion as timely. The record also reflects, however, that the trial judge did not base his ruling on the window-tint evidence. He properly considered the cumulative information known to the cooperating officers. *See Derichsweiler v. State,* 348 S.W.3d 906, 914 (Tex. Crim. App. 2011); *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987).

In *Brother v. State*, 166 S.W.3d 255, 257-60 (Tex. Crim. App. 2005), the Court of Criminal Appeals considered whether an officer could make a traffic stop based on information received from a witness who observed erratic driving. The witness gave a detailed description of the car, its location, and the erratic driving. As instructed by the dispatcher, the witness turned her hazard lights on and

followed the suspect in order to assist the officers in identifying the vehicle. The facts relayed by the dispatcher to the officer caused him to believe that the suspect was driving while intoxicated. *Id.* at 257-58.

The Court of Criminal Appeals rejected the argument that the detaining officer must have personally witnessed facts giving rise to criminal activity. *Id.* at 257. The Court explained that, under the Fourth Amendment, a temporary detention is justified "when the detaining officer has specific articulable facts which, taken together with rational inferences from those facts, lead the officer to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id.* In concluding that the stop was reasonable, the Court noted that it would be "foolish and contrary to the balance of interests struck in *Terry* and its progeny" to require an officer who is given detailed facts from "citizen-eyewitnesses" to wait until the officer observes "additional suspicious acts[.]" *Id.* at 259; *compare Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005) ("Allowing a police officer's opinion to suffice in specific facts' stead eviscerates *Terry*'s reasonable suspicion protection.").

Deputy Martin testified that an HPD investigator informed Dunn that the vehicle "most likely would be headed up towards the 59 area" and could have drugs in it. Nevertheless, Martin testified that he stopped the vehicle because he

6

believed Kirkland was violating Texas law regarding window-tint restrictions. *See* Tex. Transp. Code Ann. § 547.613 (West 2011) (Restrictions on Windows). The fact that the officer ultimately determined the tint was legal does not automatically render the stop unreasonable. *See Johnson v. State*, 237 S.W.3d 390, 394 (Tex. App.—Waco 2007, pet. ref'd). Kirkland does not address the reason the trial court gave for the ruling. Kirkland focuses on the motive or subjective intent of the officer. The trial judge focused on the presence of reasonable suspicion for an investigatory stop based on the narcotics investigator's phone call to the detaining officers.

When the motion to suppress was presented to the trial judge at the conclusion of the evidence, the court ruled as follows:

| | |
|---|---|
| [Trial Court]: | Forget the tinted window. You don't think the mere fact that at a known drug location, at a known area with a known drug dealer, doing exactly what they all do which they have seen a hundred times or a thousand times that that wouldn't rise to a reason to detain the vehicle? |
| [Defense Counsel]: | Nobody ever saw any drugs. It's mere suspicion. There's no informant that came in here and said, "I sold this guy drugs." |
| [State]: | There wasn't an informant period. |
| [Defense Counsel]: | Well, we're in dispute of that. |
| [Trial Court]: | I'm not sold on that. I think that police officers who are trained in this area, you can -- Detective Wells is still here. I assure you he would testify that, you know, he's seen numerous transactions exactly like that where |

7

|  | drugs are sold in cars or passing by cars. We know that occurs. And I think that to pull into a known drug area, stop your car, get in, you know, some transaction takes place and hops out, that's a pretty darn good way to believe that a drug transaction happened. And I believe that alone that's suspicion to stop the vehicle. |
| --- | --- |
| [Defense Counsel]: | Then they should have stopped the vehicle right then. |
| [Trial Court]: | They gave a reason for that is that this was an ongoing investigation and they didn't want to turn their heads. Okay. That motion is denied. |

In determining whether reasonable suspicion was present at the time of the investigatory stop, a trial court is required to disregard "the actual subjective intent or motive of the detaining officer[.]" *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). Instead, the trial court looks "to whether there was an objective justification for the detention." *Id*.; *compare Garcia v. State*, 43 S.W.3d 527, 530-32 (Tex. Crim. App. 2001) (Although "the subjective intent of the officer conducting the stop is irrelevant[,]" "there was insufficient evidence to establish reasonable suspicion for the stop[.]").

The trial court in this case properly applied the standard for reasonable suspicion objectively. The trial court could reasonably view this detention as an investigatory stop. A court considers the totality of the circumstances in determining the presence of reasonable suspicion. *See Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997) (There may be instances when conduct viewed in a

8

vacuum appears purely innocent, yet when viewed in light of the totality of the circumstances, gives rise to reasonable suspicion.).

The standard for reasonable suspicion cannot be "'reduced to a neat set of legal rules.'" *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Illinois v. Gates*, 426 U.S. 213, 232 (1983)). It is clear that the observed conduct of the suspect need not by itself appear to have been unlawful when "viewed in a vacuum." *Woods*, 956 S.W.2d at 38. And an officer need not have firsthand knowledge of the information that gives rise to reasonable suspicion to conduct an investigatory stop. *See Adams v. Williams,* 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Brother*, 166 S.W.3d at 257. A hunch is insufficient. *United States v. Arvizu*, 534 U.S. 266, 273-74, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). The suspicion of criminal activity need not satisfy the probable-cause standard, however, and what is required for reasonable suspicion "falls considerably short" of what would be required by a preponderance-of-the-evidence standard. *Arvizu*, 534 U.S. at 274.

The cumulative information known to the cooperating officers at the time of the stop is to be considered. *See Derichsweiler*, 348 S.W.3d at 914; *Hoag*, 728 S.W.2d at 380 ("Where there has been some cooperation between police officers, the cumulative information known to the cooperating officers at the time of the

stop is to be considered in determining whether reasonable suspicion exists."). The HPD investigator testified to the basis for his conclusion that Kirkland was in possession of illegal drugs. He testified he believed he had probable cause. He conveyed the information, and asked the officers in Montgomery County to make the stop. He did not want to make the stop himself, apparently because of concern that a stop in the area of the transaction would jeopardize the ongoing narcotics investigation. The detaining officers determined that the brown Ford Explorer they saw on Highway 59 had the same license plate number as the one identified by the HPD narcotics investigator. *See generally Brother*, 166 S.W.3d at 258 ("Relying on the information supplied by the citizen, the officer testified he was able to locate and identify appellant's vehicle."). The trial court properly considered the totality of the circumstances. *See Alabama v. White*, 496 U.S. 325, 330-31, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). The trial court did not err in concluding that the officers had reasonable suspicion to conduct an investigatory stop of the vehicle.

After the initial investigatory stop, the investigation developed additional reason for further detention. *See Farmer v. State*, 47 S.W.3d 187, 191 (Tex. App.—Texarkana 2001, pet. ref'd). Kirkland's appearance raised suspicion. One passenger admitted that the drug purchase occurred. Drugs were observed in plain view on the floorboard of the car.

We hold that the trial court did not err in concluding that the investigatory stop was reasonable under the Fourth Amendment. Issue one is overruled.

THE WINDOW-TINT RESULTS

In his second issue, Kirkland maintains that the trial court erred by admitting window-tint-meter evidence. He asserts that although the trial court held a hearing, "the State merely questioned the witness about his experience in the use of the window tint meter" and did not establish the validity of the scientific theory underlying the device and the technique applying the theory.

The officers testified they stopped the vehicle based on a belief that the tint on the vehicle violated Texas law. The trial court based its ruling denying the motion to suppress on the narcotics investigation information. The tint-meter testing indicated the tint was in fact legal. Considering the record as a whole, we do not see how the admission of the complained-of evidence harmed Kirkland. *See Motilla v. State*, 78 S.W.3d 352, 355-57 (Tex. Crim. App. 2002). The test results did not support the officer's stated belief. Regardless of whether the trial court should have admitted the evidence, the ruling is not one that justifies a reversal of the judgment. *See* Tex. R. App. P. 44.2. Issue two is overruled. The trial court's judgment is affirmed.

AFFIRMED.

_____

DAVID GAULTNEY
Justice

Submitted on March 14, 2013
Opinion Delivered April 10, 2013
Publish

Before McKeithen, C.J., Gaultney and Horton, JJ.

12