# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00456-CR

**The State of Texas, Appellant**

**v.**

**Brandon David Prince, Appellee**

**FROM COUNTY COURT AT LAW NO. 2 OF WILLIAMSON COUNTY**
**NO. 17-05555-2, HONORABLE LAURA B. BARKER, JUDGE PRESIDING**

## O R D E R   A N D   M E M O R A N D U M   O P I N I O N

**PER CURIAM**

Following a traffic stop, Brandon David Prince was charged with driving while intoxicated with a blood-alcohol concentration of 0.15 or more. *See* Tex. Penal Code § 49.04(a), (d) (setting out elements of offense of driving while intoxicated and elevating offense level if defendant's blood-alcohol concentration is 0.15 or more). Prior to trial, Prince filed a motion to suppress evidence and testimony pertaining to the traffic stop. After convening a hearing regarding the motion, the county court at law granted the motion to suppress and issued findings of fact and conclusions of law setting out the reasons for its ruling. The State appeals the ruling by the county court at law. *See* Tex. Code Crim. Proc. art. 44.01(a)(5) (allowing State to appeal trial court order granting motion to suppress). Because the findings and conclusions are ambiguous and do not

address each dispositive issue, we abate and remand this case to allow the county court at law to prepare supplemental findings and conclusions.

## BACKGROUND

As set out above, Prince was charged with driving while intoxicated following a traffic stop. The traffic stop was initiated by Officer John Weston, and Officer Weston was the only witness to testify at the suppression hearing. During the hearing, Prince argued that there was no reasonable suspicion to initiate the traffic stop.

In his testimony, Officer Weston stated that he initiated the traffic stop after observing Prince commit several traffic violations when turning right out of a parking lot at approximately 10:30 p.m. Regarding the parking lot, Officer Weston explained that it is used by two bars and other businesses and that the lot has a private driveway connected to a public road. Regarding the public road, Officer Weston testified that it was a three-lane road with two lanes of traffic and a center turn lane separated from the other lanes by "a solid yellow line along" both sides of the lane. During Officer Weston's testimony, the county court at law admitted into evidence photographs submitted by the State and by Prince depicting the parking lot as well as the public road that Prince allegedly drove onto after leaving the parking lot. The photos are generally consistent with Officer Weston's testimony, and the photos of the parking lot show that the driveway crosses a sidewalk running parallel to the public road.

Regarding the traffic violations, Officer Weston recalled that he observed Prince violate four provisions of the Transportation Code. First, Officer Weston explained that Prince violated section 545.256, which specifies, in relevant part, that a driver "emerging from an alley,

2

driveway, or building in a business or residence district" must "stop the vehicle before moving on a sidewalk or the sidewalk area extending across an alley or driveway." Tex. Transp. Code § 545.256. Second, Officer Weston testified that he observed Prince violate section 545.101, which specifies that a driver who is turning right must "make both the approach and the turn as closely as practicable to the right-hand curb or edge of the roadway." *Id.* § 545.101(a). Third, Officer Weston stated that he observed Prince violate section 545.060, which reads, in relevant part, as follows:

> (a) An operator on a roadway divided into two or more clearly marked lanes for traffic:
>
> > (1) shall drive as nearly as practical entirely within a single lane; and
> >
> > (2) may not move from the lane unless that movement can be made safely.
>
> (b) If a roadway is divided into three lanes and provides for two-way movement of traffic, an operator on the roadway may not drive in the center lane except:
>
> > (1) if passing another vehicle and the center lane is clear of traffic within a safe distance;
> >
> > (2) in preparing to make a left turn; or
> >
> > (3) where the center lane is designated by an official traffic-control device for movement in the direction in which the operator is moving.

*Id.* § 545.060(a)-(b). Finally, Officer Weston related that because Prince committed the three traffic violations listed above, Prince also violated section 545.401, which specifies that "[a] person commits an offense if the person drives a vehicle in wilful or wanton disregard for the safety of persons or property." *Id.* § 545.401(a); *see also id.* § 545.401(b) (specifying that provision applies to parking lots, highways, and other public places).

3

When discussing his observations that night, Officer Weston stated that at around 10:30 p.m. he observed Prince's truck leave a parking lot used by two bars and other businesses and turn right onto a roadway. More specifically, Officer Weston recalled that Prince "failed to stop for moving onto the sidewalk area" intersecting the parking lot's driveway and "exit[ed] the private drive at a high rate of speed," causing his tires to screech and resulting in his truck "almost fishtail[ing]" and in Prince having "to jerk the wheel back left in order to keep himself on the roadway and from going into the ditch," but Officer Weston admitted that he was not sure if Prince's vehicle crossed the white line nearest to the parking lot when Prince took corrective action. Furthermore, Officer Weston stated that Prince failed "to maintain a single lane of traffic" after leaving the parking lot because he crossed "into the center lane" when his two left tires crossed the yellow median. Although Officer Weston agreed that the center lane was not a lane of oncoming traffic and that there were no cars immediately ahead of Prince in the center lane, Weston asserted that Prince committed a traffic violation by crossing into the center lane because he was not attempting to make a left turn or attempting to pass someone and because no traffic-control device was in place directing Prince to drive in the center lane. Moreover, Officer Weston explained that as Prince was leaving the parking lot, he "failed to make the right turn as closely as practical to the right edge of the road[]way."

During his cross-examination, Officer Weston admitted that he did not list each traffic violation in his police report or in his affidavit for arrest and agreed that the only offense he described in general terms in his arrest affidavit was the failure to maintain a single lane. Additionally, Officer Weston stated that he understood that trial courts make a determination regarding reasonable suspicion based on the totality of the circumstances and that officers should

4

include all the information that they have in their reports. Furthermore, Officer Weston admitted that he did not mention all of the Transportation Code provisions or state that Prince was driving recklessly during his testimony at the automatic-license-revocation hearing because at the time he was unaware of which specific provisions applied, but Officer Weston related that he knows what types of driving constitute violations of the Transportation Code and explained that he was aware of all of the traffic violations at the time of the traffic stop even though he did not mention all of them. Additionally, after a recording of Officer Weston's interactions with Prince during the traffic stop was admitted and played for the county court at law, Officer Weston agreed that he told Prince that Prince "crossed . . . both lanes and almost into the center lane there when he exited the parking lot"; however, Officer Weston explained that he "misspoke" when he told Prince that he had crossed two lanes of traffic because there was only one lane of traffic before the center lane and that he similarly misspoke when he said that Prince's vehicle "almost" went into the center lane.

In addition to discussing the four alleged violations of the Transportation Code, Officer Weston also discussed whether he had reasonable suspicion to believe that Prince was driving while intoxicated before interacting with Prince during the traffic stop. Specifically, Officer Weston responded affirmatively when asked about whether he lacked "sufficient facts to believe that [Prince] was intoxicated" prior to smelling the alcohol on Prince's breath during the traffic stop and stated that he did not have a firm belief regarding whether Prince was intoxicated until after Officer Weston personally interacted with Prince. However, Officer Weston also explained that reasonable suspicion to believe that Prince was driving while intoxicated actually existed based on the time of day at issue and on Officer Weston's observations of Prince's traffic violations, of the manner in which Prince was driving, and of Prince leaving a parking lot used by two bars.

5

At the conclusion of the hearing, the county court at law granted the motion to suppress. After that ruling, the county court at law issued the following findings of fact and conclusions of law relevant to this appeal:

**Findings of Fact**

3. The arrest warrant in this case alleges that Defendant "quickly" exited a parking lot while "screeching" his tires, crossed a yellow line, and then over-corrected into a lane of travel. Austin Police Department Officer John Weston, the arresting officer in this case, swore on August 25, 2017, that this conduct constituted a traffic violation without specifying which section of the Transportation Code had been violated.

4. On June 20, 2018, Weston testified at the hearing on Defendant's Motion to Suppress that he had been employed as a police officer for approximately one year, which meant that at the time of Defendant's arrest, he had been a police officer for approximately two months.

5. Weston testified that on the night of August 24, 2017, he observed Defendant commit three different violations of the Texas Transportation Code, namely: (a) failure to stop "for moving onto the sidewalk area"; (b) failure to make a right turn as closely as practical to the right edge of the roadway; and (c) failure to maintain a single lane of travel by crossing into a center turn lane. Weston also offered his opinion that the combination of those three Transportation Code violations constituted the offense of reckless driving.

6. Weston admitted that none of the alleged traffic violations were recorded.

7. On cross-examination Weston admitted that he did not articulate any of the Transportation Code violations he testified to in either the affidavit for arrest or the ALR hearing in this case.

8. Weston then agreed that Defendant did not cross over into an oncoming lane of traffic. Weston agreed further that when Defendant allegedly "over corrected," Weston did not know whether Defendant left his lane or not.

9. Weston testified that spinning of tires did not constitute a Transportation Code violation.

10. Weston testified that he did not cite Defendant for any traffic violations.

6

11.   Weston testified that at the time he activated his lights and siren to detain Defendant, he had no "reasonable specific articulable facts" to believe Defendant was intoxicated.

12.   Weston stated that at the time he detained Defendant, he was investigating the three traffic violations he did not include in the arrest warrant affidavit or testify to at the ALR hearing.

13.   Weston stated further that, although given the opportunity, he did not testify at the ALR hearing that Defendant's conduct constituted the offense of reckless driving.

14.   Weston acknowledged that he was trained that during an investigation, every fact matters and the totality of the circumstances is to be documented.

15.   Weston could not offer a satisfactory explanation for the lack of specificity in the arrest warrant affidavit.

16.   After being shown the dashboard camera footage, Weston acknowledged that he told Defendant he pulled him over because he crossed two lanes of traffic and "almost into the center lane," but that he (Weston) was mistaken.

**Conclusions of Law**

4.  Texas Transportation Code Section 545.060(a) provides that "[a]n operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practicable entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely."  Tex. Transp. Code § 545.060(a).

5.   Even assuming Weston was referencing a violation of Transportation Code Section 545.060(a) in his arrest warrant affidavit, there was no evidence presented at the hearing on Defendant's Motion to Suppress that Defendant's tires crossed a lane of traffic in an unsafe manner.  Thus, there could be no reasonable suspicion that a traffic violation had been committed.  *State v. Houghton*, 384 S.W.3d 441, 447-48 (Tex. App.—Fort Worth[] 2012[, no pet.]).

6.  Likewise, there was no evidence presented that the "screeching" of tires in this case was a violation of the Transportation Code or that the "screeching" of tires amounted to reasonable suspicion which would justify a warrantless detention.

. . .

7

8. The other alleged violations of the Transportation Code, which Weston brought forth for the first time at the hearing on Defendant's Motion to Suppress, were not recorded. Therefore, the only evidence that Defendant committed any other violations of the Transportation Code prior to his detention is based on Weston's testimony alone. While the testimony of an officer alone could normally suffice, because of Weston's equivocating testimony, the Court has concerns as to his credibility, and therefore, cannot rely on his recollection as to any other alleged violations of the Transportation Code.

9. Based on the totality of the circumstances, there was no reasonable suspicion for a detention or temporary investigation because Weston had no specific articulable facts that, combined with rational inferences from those facts, which would lead him to reasonably conclude that Defendant was or was soon to be engaged in criminal activity. *See State v. Houghton*, 384 S.W.3d 441, 446 (Tex. App.—Fort Worth[] 2012[, no pet.])[ (*citing Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App.), *cert. denied*, 132 S. Ct. 150 (2011); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000)[)].

10. For the foregoing reasons, all evidence obtained pursuant to the traffic stop in this case is suppressed.

(Record cites removed).

On appeal, the State challenges the county court at law's ruling on the motion to suppress.

## STANDARD OF REVIEW AND GOVERNING LAW

"A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts." *Prejean v. State*, No. 02-10-00316-CR, 2011 WL 856901, at *3 (Tex. App.—Fort Worth Mar. 10, 2011, no pet.) (mem. op., not designated for publication). In order for reasonable suspicion to exist, an actual violation does not need to have occurred; rather, it is only necessary that "the officer reasonably believed a violation was in progress." *Green v. State*, 93 S.W.3d 541, 545 (Tex. App.—Texarkana

8

2002, pet. ref'd). In other words, "for a peace officer to stop a motorist to investigate a traffic infraction, . . . 'proof of the actual commission of the offense is not a requisite.'" *Leming v. State*, 493 S.W.3d 552, 561 (Tex. Crim. App. 2016) (quoting *Drago v. State*, 553 S.W.2d 375, 377 (Tex. Crim. App. 1977)); *see Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000) (noting that officer may briefly detain person for investigative purposes on less than probable cause where specific and articulable facts along with inferences from those facts reasonably warrant detention). Rather, reasonable suspicion "requires only 'some minimal level of objective justification' for the stop." *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012) (quoting *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010)). Accordingly, "[a]t a suppression hearing, the State need not establish that a crime occurred prior to the investigatory stop." *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011).

"In assessing whether the intrusion was reasonable, an objective standard is utilized: would the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate." *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997). For that reason, the assessment "disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). "[A] traffic stop will be deemed valid as long as a reasonable officer in the same circumstances could have stopped the car for the suspected offense." *Green*, 93 S.W.3d at 545. Moreover, the assessment is made "in light of the totality of the circumstances." *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).

9

"Upon request of the losing party, a trial court must issue essential findings of fact and conclusions of law that justify its ruling." *State v. Copeland*, 501 S.W.3d 610, 613 (Tex. Crim. App. 2016). In other words, the trial court must make "findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts." *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011) (quoting *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006)). "Occasionally, the trial judge may make explicit findings that she considers sufficient and dispositive of the historical facts, but the appellate court determines that those findings are either ambiguous or insufficient to resolve the legal issue." *State v. Mendoza*, 365 S.W.3d 666, 670 (Tex. Crim. App. 2012). If a trial court's findings and conclusions are ambiguous regarding whether it believed a witness's testimony, the trial court should be given the opportunity "to clarify [its] ambiguous factual findings and make an explicit credibility determination." *Id.* at 673.

## DISCUSSION

As set out above, Officer Weston explained that he initiated the traffic stop after allegedly observing Prince violate provisions of the Transportation Code by leaving a business parking lot without stopping the vehicle before moving onto a sidewalk that crossed the driveway of the parking lot, by failing to make a right turn as close as practical to the right side of the road, and by either failing to maintain a single lane of traffic or improperly driving in the center lane. *See* Tex. Transp. Code §§ 545.060(a)-(b), .101(a), .256. Further, Officer Weston testified that his observation of those three traffic violations served as a basis for concluding that Prince was driving "in wilful or wanton disregard for the safety of persons or property" in violation of the Transportation

10

Code. *See id.* § 545.401(a). Finally, testimony was presented regarding whether reasonable suspicion existed to believe that Prince was driving while intoxicated based on the alleged violations of the Transportation Code, on the manner in which Prince was driving, on the time of day that the alleged violations occurred, and on Officer Weston's testimony that the violations occurred when Prince was leaving a parking lot used by two bars. *See* Tex. Penal Code § 49.04.

When setting out its findings of fact and conclusions of law, the county court at law focused on the allegations regarding whether Prince maintained a single lane of traffic under subsection 545.060(a) but did not address whether Prince may have violated subsection 545.060(b), and the county court at law addressed the other alleged violations of the Transportation Code in a single conclusion by stating that it could not determine that Officer Weston had reasonable suspicion to believe that those violations occurred. However, the county court at law did not include in its findings and conclusions determinations relevant to the other offenses and to other issues discussed during the suppression hearing. For example, the county court at law made no findings regarding whether the parking lot was used, in part, for bar patrons, regarding whether the driveway crossed a sidewalk, regarding how many lanes of traffic there were on the road that Prince turned onto, and regarding the time of day in which these alleged violations occurred.

Furthermore, although the county court at law stated in the conclusion discussed above that it had concerns about Officer Weston's credibility, the county court at law did not specify which portions of Officer Weston's testimony it found to be not credible. For example, the county court at law did not explain whether it found to be credible Officer Weston's statements that he observed Prince leave the parking lot without stopping at the sidewalk, *see Joubert v. State*,

11

129 S.W.3d 686, 689 (Tex. App.—Waco 2004, no pet.) (determining that reasonable suspicion to support traffic stop was present when police officer testified that he observed defendant leaving driveway and entering roadway without stopping and that reasonable suspicion existed even if police officer was mistaken about whether offense actually occurred), that he observed Prince drive at a high rate of speed and screech his tires when leaving the parking lot, *cf. Blount v. State*, 965 S.W.2d 53, 55 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (concluding that police officer had probable cause to believe that defendant violated section 545.401 of Transportation Code by recklessly driving when officer observed defendant speeding in mall parking lot, "jumping curbs, crossing a sidewalk and grassy medians, entering the street without stopping, and speeding on that street"), that he observed Prince nearly lose control over his vehicle when turning after overcorrecting, that he observed Prince make a right turn that was not close to the right edge of the roadway, *see Powers v. State*, No. 14-03-00442-CR, 2004 WL 504596, at *1, *2 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (mem. op., not designated for publication) (affirming ruling denying defendant's motion to suppress where court determined that legality of traffic stop was supported by police officer's testimony that "he observed the vehicle driven by appellant make a right-hand turn off of Sunflower Street into the left northbound lane on Cullen Street" and that officer "believed this conduct to be in violation of Section 545.101(a) of the Texas Transportation Code"), that Prince crossed into the center lane, that Prince was not attempting to make a left turn or pass someone when and if he entered the center lane, and that Prince was not directed into the center lane by a traffic-control device, *see Bracken v. State*, 282 S.W.3d 94, 98 (Tex. App.—Fort Worth 2009, pet. ref'd) (explaining that violation of provision of Transportation Code creates

12

reasonable suspicion justifying stop and noting testimony from police officer that officer observed defendant cross "the center line" of roadway).

Finally, although Officer Weston provided some testimony indicating that there was reasonable suspicion to believe that Prince was driving while intoxicated at the time that Officer Weston decided to initiate the traffic stop, although the State asserted in its closing arguments that there was reasonable suspicion based on the traffic violations as well as the time of day and the presence of bars in the parking lot, and although the county court at law addressed the issue during the hearing, no findings or conclusions were made regarding whether there was an objective basis for a police officer to reasonably believe that Prince was driving while intoxicated when Officer Weston initiated the traffic stop. *Cf. Foster*, 326 S.W.3d at 614 (determining that trial court's ruling denying motion to suppress should be upheld, in part, given time of night at which traffic stop occurred, location near bar district, and defendant's erratic driving).

In light of the preceding, we abate and remand this case to the county court at law to allow it the opportunity to make "additional, specific findings of fact" and conclusions of law regarding the dispositive issues in this case pertaining to whether there was an objective basis for a police officer to have had reasonable suspicion to believe that Prince had committed the traffic offenses alleged above and to believe that Prince was driving while intoxicated at the time that the traffic stop was initiated. *See Elias*, 339 S.W.3d at 676; *see also State v. Adams*, 454 S.W.3d 38, 47 (Tex. App.—San Antonio 2014, no pet.) (deciding that trial court's findings and conclusions fell "short of" addressing every potentially dispositive issue, that appellate court could not determine whether legal conclusions "were in error" without further findings, and that requested "findings

13

constitute essential findings and are necessary" to resolve appeal). These additional findings and conclusions should include specific credibility determinations regarding Officer Weston's testimony pertaining to the alleged offenses. On remand, the county court at law should feel free to revisit its suppression ruling if it decides when making the supplemental determinations that reasonable suspicion was present when Officer Weston initiated the traffic stop.

A supplemental clerk's record containing the county court at law's additional findings of fact and conclusions of law is ordered to be filed with this Court by January 7 , 2019. This appeal will be reinstated after the supplemental clerk's record is filed. Further, the parties are ordered to file with this Court supplemental appellate briefing regarding the county court at law's new findings and conclusions. *See* Tex. R. App. P. 38.7 (authorizing appellate court to request supplemental briefing "whenever justice requires" and "on whatever reasonable terms the court may prescribe"). The supplemental appellant's brief will be due on or before February 7, 2019, and the supplemental appellee's brief will be due on or before the thirtieth day after the supplemental appellant's brief has been filed. Alternatively, if the county court at law revisits its ruling and denies the motion to suppress, the parties should file a timely motion to dismiss this appeal. *See Trevino v. State*, No. 07-17-00417-CR, 2017 WL 5505410, at *1 (Tex. App.—Amarillo Nov. 15, 2017, no pet.) (per curiam) (mem. op., not designated for publication) (explaining that "[t]here is no statute or rule that allows a defendant to appeal an interlocutory order denying a motion to suppress" and that defendant may only "challenge such a ruling by direct appeal after the trial court has signed a judgment").

It is so ordered December 4, 2018.

Before Justices Puryear, Goodwin, and Bourland

Abated and Remanded

Filed:   December 4, 2018

Do Not Publish