# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00149-CR

---

**Jose Salvador Aguilar, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM COUNTY COURT AT LAW NO. 2 OF COMAL COUNTY
### NO. 2016CR1020, THE HONORABLE CHARLES A. STEPHENS II, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Jose Salvador Aguilar was convicted of driving while intoxicated and sentenced to 180 days in county jail, but the trial court placed him on community supervision for twelve months. *See* Tex. Penal Code §§ 12.22, 49.04. On appeal, Aguilar contends that the trial court erred by denying his motion to suppress, overruling his objection to allegedly improper arguments by the State during the trial, and failing to include in the jury charge his requested instruction. We will affirm the trial court's judgment of conviction.

## BACKGROUND

During the Memorial Day holiday weekend in 2016, Officer Anthony Aragones initiated a traffic stop after observing Aguilar speeding and later arrested Aguilar for driving while intoxicated ("DWI"). A sample of Aguilar's blood was taken approximately two hours

after the start of the traffic stop, and the results showed that Aguilar had a blood-alcohol concentration of 0.102.

Aguilar filed a motion to suppress the evidence obtained during the traffic stop. During a hearing on the motion, Officer Aragones testified about the traffic stop and the events leading up to Aguilar's arrest. After considering the evidence presented during the hearing and the parties' arguments, the trial court denied the motion to suppress. During the trial, the parties relitigated the suppression issue after Officer Aragones finished testifying, and the trial court again denied the motion to suppress.

At trial, various witnesses testified regarding the traffic stop, Aguilar's performance during his field-sobriety testing, and the testing performed on the sample of Aguilar's blood. In its closing argument, the State presented argument regarding whether Aguilar may have digested the contents of his dinner before the traffic stop, and Aguilar objected to the State's argument. The trial court overruled Aguilar's objection. During a charge conference, Aguilar asked the trial court to include an instruction under article 38.23 of the Code of Criminal Procedure regarding whether Officer Aragones had reasonable suspicion to detain Aguilar beyond the traffic stop. The trial court denied that request.

After considering the evidence presented at trial, the jury found Aguilar guilty of the charged offense. Aguilar appeals his conviction.

## DISCUSSION

In his three issues on appeal, Aguilar argues that the trial court erred by denying his motion to suppress, overruling his objection to the State's improper jury argument made

2

during its closing arguments, and failing to include in the jury charge an instruction under article 38.23 of the Code of Criminal Procedure.

**Ruling on Motion to Suppress**

*Evidence Presented at the Suppression Hearing and at Trial*

During the hearing on the motion to suppress and at trial, Officer Aragones testified regarding the traffic stop and the events leading up to Aguilar's arrest. A recording from Officer Aragones's dashboard camera was admitted into evidence and played for the trial court. Although the recording shows the traffic stop and subsequent investigation, there is no audio on much of the recording. The following summary comes from the evidence presented during the suppression hearing and from Officer Aragones's testimony at trial.

Officer Aragones testified that he had received specialized training regarding intoxication-related offenses and that he was assigned to "a DWI task force" at the river in Comal County over the Memorial Day holiday weekend. In addition, Officer Aragones related that while patrolling a road near the river around 8:45 p.m., he observed a truck being driven by an individual later identified as Aguilar that appeared to be speeding and confirmed his suspicion by using his radar, which showed that the vehicle was travelling forty-six miles per hour in a thirty-five-mile-per-hour zone. After confirming that Aguilar was speeding, Officer Aragones initiated a traffic stop of the truck. When he approached the truck, Officer Aragones noticed the smell of alcohol coming from inside the truck. Officer Aragones described Aguilar as wearing a swimsuit but not a shirt. While at the truck, Officer Aragones explained to Aguilar why he had initiated the stop and asked to see Aguilar's driver's license and proof of insurance.

When testifying, Officer Aragones explained that he asked Aguilar to get out of the truck to talk because there were several passengers in the car and because he wanted to

3

determine from whom the smell of alcohol was emitting. Next, Officer Aragones testified that he could smell alcohol on Aguilar's breath when Aguilar responded to his questions after getting out of the truck. Officer Aragones asked Aguilar where he was driving from, and Aguilar stated that he had been at the river with his family and admitted that he had been drinking, that he drank "three or four beers" while at the river, that he started drinking around 6:00 p.m., and that he drank his last beer ten to fifteen minutes before the traffic stop. In addition, Officer Aragones explained that he then asked Aguilar to submit to field-sobriety testing and later asked Aguilar to provide a breath sample after Aguilar had difficulty performing the horizontal-gaze-nystagmus test.

In his testimony, Officer Aragones admitted that the only traffic violation that he observed before initiating the stop was Aguilar's speeding and that he did not see Aguilar weaving or swerving while driving. While describing Aguilar's behavior, Officer Aragones explained that Aguilar pulled his truck over quickly, did not have difficulty presenting his driver's license and proof of insurance, did not appear to have difficulty balancing, was not swaying or stumbling, did not slur his words, did not have bloodshot eyes, and provided timely responses to the questions that were asked of him. When asked if the time that he directed Aguilar to step out of the car and walk to the back was the "moment . . . when [he was] going to decide it's a DWI investigation," Officer Aragones replied, "Yes." After being asked if he was going to perform an investigation regarding whether Aguilar was driving while intoxicated once he asked Aguilar to get out of the car, Officer Aragones replied, "Yeah. When I smelt the alcohol I wanted to get him out and talk to him for a little bit." Similarly, Officer Aragones replied, "Yes," when asked if he decided "to kind of transition from a traffic stop to a DWI investigation" after Aguilar got out of the truck. Additionally, Officer Aragones admitted that

4

speeding is not one of the indicators of intoxication used by the National Highway Traffic Safety Administration, that he did not consider Aguilar's speeding when deciding whether there was reasonable suspicion to detain Aguilar, and that the only clue that he observed indicating that Aguilar might be intoxicated before he began his investigation was the smell of alcohol.

The recording from Officer Aragones's dashboard camera shows him initiating the traffic stop and approaching Aguilar's truck. Aguilar got out of the truck less than a minute after Officer Aragones approached the truck and talked with Officer Aragones at the back of the truck for several minutes before Officer Aragones initiated the horizontal-gaze-nystagmus test. The recording shows other passengers inside the truck.

After considering the evidence presented and the parties' arguments during the hearing and at trial, the trial court denied Aguilar's suppression motion and issued the following findings of fact and conclusions of law after the conclusion of the trial:

Findings of Fact

1. Trooper Anthony Aragones was credible, as was his testimony.

. . .

5. On May 29, 2016, Aragones was working a DWI task force during the Memorial Day weekend out at the river.

. . .

7. The Defendant was stopped for speeding 46 in a 35 mph zone on Hueco Springs Road at around 8:45 p.m.

. . .

5

9. The Defendant was the driver of the vehicle; the vehicle was also occupied by his wife and a child.

10. The Trooper smelled an odor of alcohol coming from the vehicle.

. . .

12. Aragones asked the Defendant to step out of the vehicle away from his wife and child and to talk to the Trooper.

13. Aragones smelled the odor of alcohol coming from the Defendant's breath once he was outside the vehicle.

. . .

15. Defendant admitted to drinking; he admitted to having four beers prior to driving.

16. Defendant said he started drinking at 6:00 p.m. and stopped 10 or 15 minutes prior to the stop.

Conclusions of Law

. . .

12. An odor of alcohol on a motorist's breath in conjunction with another violation constitutes reasonable suspicion for an investigation of intoxication.

13. The smell of alcohol can constitute, or contribute to, reasonable suspicion of intoxication.

14. Additionally, speeding can contribute to reasonable suspicion of driving while intoxicated.

15. Aragones had reasonable suspicion to advance a "vital public interest" by briefly detaining the Defendant to investigate whether he was driving while intoxicated.

*Standard of Review and Governing Law*

Appellate courts review a trial court's ruling on a motion to suppress for an abuse of discretion. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). Under that standard, the record is "viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). In general, appellate courts apply "a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing *de novo* the trial court's application of the law." *See State v. Cuong Phu Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015); *see also Arguellez*, 409 S.W.3d at 662 (explaining that appellate courts afford "almost complete deference . . . to [a trial court's] determination of historical facts, especially if those are based on an assessment of credibility and demeanor"). "The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). Moreover, courts "consider only the evidence adduced at the suppression hearing because the ruling was based on that evidence rather than evidence introduced later" unless "the suppression issue has been consensually relitigated by the parties during trial." *Herrera v. State*, 80 S.W.3d 283, 290-91 (Tex. App.—Texarkana 2002, pet. ref'd) (op. on reh'g). A trial court's ruling on the motion will be upheld if it is correct under any theory of law applicable to the case regardless of whether the trial court based its ruling on that theory,

but "a trial court's ruling will not be reversed based on a legal theory that the complaining party did not present to it." *Story*, 445 S.W.3d at 732.

"Routine traffic stops are analogous to investigative detentions." *Martinez v. State*, 236 S.W.3d 361, 369 (Tex. App.—Fort Worth 2007, pet. dism'd, untimely filed); *see also State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011) (describing types of interactions between citizens and law-enforcement personnel). Investigative detentions are less intrusive than arrests, *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011), and an officer may initiate a traffic stop if he has reasonable suspicion that a crime is about to be committed or has been committed, *see Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014). For reasonable suspicion to exist, an actual violation does not need to have occurred; rather, it is only necessary that "the officer reasonably believed a violation was in progress." *Green v. State*, 93 S.W.3d 541, 545 (Tex. App.—Texarkana 2002, pet. ref'd); *see Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000) (noting that officer may briefly detain person for investigative purposes on less than probable cause where specific and articulable facts along with inferences from those facts reasonably warrant detention).

"In assessing whether the intrusion was reasonable, an objective standard is utilized: would the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate." *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997). "[T]here need only be an objective basis for the stop," and "the subjective intent of the officer conducting the stop is irrelevant." *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *see also Kirkland v. State*, 400 S.W.3d 625, 629 (Tex. App.—Beaumont 2013, pet. ref'd) (explaining that when determining whether reasonable suspicion is present, courts are "required to disregard 'the actual subjective intent or motive of

8

the detaining officer'" (quoting *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011))). Accordingly, "the subjective reasons uttered by the officer to legitimize the stop have no bearing on the outcome if the totality of the circumstances nonetheless would lead a police officer to reasonably suspect that crime is afoot," *State v. Patterson*, 291 S.W.3d 121, 123 (Tex. App.—Amarillo 2009, no pet.), and an objectively valid stop will be upheld even though an officer subjectively initiates the stop for the wrong reason, *Singleton v. State*, 91 S.W.3d 342, 347 (Tex. App.—Texarkana 2002, no pet.). Courts require only a "minimal level of objective justification" on the part of the officers, and "the likelihood of criminal activity need not rise to the level required for probable cause" and "falls considerably short of satisfying a preponderance of the evidence standard." *Tanner v. State*, 228 S.W.3d 852, 855, 856 (Tex. App.—Austin 2007, no pet.). Moreover, the assessment is made in light "of the totality of the circumstances." *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). Provided that the traffic stop is based on reasonable suspicion, then the detention "does not violate Texas law." *Guerra*, 432 S.W.3d at 911.

"[T]he general rule is that an investigative stop can last no longer than necessary to effect the purpose of the stop." *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). "During a traffic stop, an officer may demand identification, a valid driver's license, and proof of insurance from the driver, and may also check for outstanding warrants." *Simpson v. State*, 29 S.W.3d 324, 327 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Further, "an officer is entitled to request information concerning . . . the driver's destination[] and the purpose of the trip." *McQuarters v. State*, 58 S.W.3d 250, 255-56 (Tex. App.—Fort Worth 2001, pet. ref'd). "If during a valid traffic stop and detention, the officer develops reasonable suspicion that the detainee is engaged in criminal activity, prolonged or continued detention is justified." *Haas v.*

9

*State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd); *see Powell v. State*, 5 S.W.3d 369, 377 (Tex. App.—Texarkana 1999, pet. ref'd); *see also Woodard*, 341 S.W.3d at 414 (explaining that information known to officer gave him probable cause to arrest defendant for driving while intoxicated or reasonable suspicion to detain and administer field-sobriety tests). "After the initial traffic-violation stop, the officer is entitled to rely on all of the information obtained during the course of his contact with the citizen in developing the articulable facts that would justify a continued investigatory detention." *Powell*, 5 S.W.3d at 377.

*Appellate Arguments*

On appeal, Aguilar does not dispute that Officer Aragones had reasonable suspicion to initiate the stop after observing him commit a traffic offense by speeding. *See* Tex. Transp. Code §§ 545.351-.352; *see also Icke v. State*, 36 S.W.3d 913, 916 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (determining that officer had reasonable suspicion to initiate traffic stop where officer observed defendant speeding and confirmed that observation by using radar gun to estimate defendant's speed). Instead, Aguilar contends that the trial court erred by denying his motion to suppress because Officer Aragones did not have reasonable suspicion to continue to detain him beyond the scope of the official traffic stop to investigate whether he committed the offense of driving while intoxicated.

As support for his argument, Aguilar points to testimony by Officer Aragones that he argues supports a determination that Aguilar was not intoxicated (e.g., Aguilar was not swerving when driving, was able to provide his driver's license without fumbling, did not have bloodshot eyes, did not slur his speech, and did not stumble). Next, Aguilar highlights Officer Aragones's testimony that speeding is not listed as an indicator of intoxication by the National

Highway Traffic Safety Administration and that the only clue of intoxication the officer observed before beginning the DWI investigation was the smell of alcohol. Further, Aguilar notes that Officer Aragones did not testify that he considered Aguilar's presence at the river or the time of the stop when deciding to detain Aguilar. Moreover, Aguilar urges that the fact that it was a holiday weekend could not properly play a role in Officer Aragones's decision to detain Aguilar because the date of a stop cannot provide an evidentiary basis for determining whether someone is intoxicated. Additionally, Aguilar contends that Officer Aragones "definitively stated that he detained [him] at the moment [Officer Aragones] ordered him from the vehicle" and, accordingly, that the officer's subsequent observation of a smell of alcohol on Aguilar's breath and Aguilar's admission to consuming alcohol could not have helped establish reasonable suspicion retroactively. Alternatively, Aguilar contends that the smell of alcohol and his admission to drinking alcohol "are only indicative of the singular fact that [he] consumed alcohol" and, therefore, could not help establish reasonable suspicion to believe that he had committed the offense of driving while intoxicated. In light of the preceding, Aguilar insists that Officer Aragones's testimony demonstrates that the continued detention was unreasonable. *Cf. Domingo v. State*, 82 S.W.3d 617, 622 (Tex. App.—Amarillo 2002, no pet.) (explaining that "so long as consumption of alcohol is not illegal in and of itself, a standard permitting or requiring detention and investigation of persons for public intoxication based solely on whether the odor of alcohol on a person's breath is 'strong,' 'moderate,' 'weak' or some other such subjective classification invites unwarranted police intrusions into the affairs and freedom of persons").

As an initial matter, we note that although Aguilar points to portions of Officer Aguilar's testimony setting out his subjective reasons for detaining Aguilar, appellate courts look to the totality of the circumstances and apply an objective standard to determine whether

11

reasonable suspicion is present, *see Woods*, 956 S.W.2d at 38; *Davis*, 947 S.W.2d at 243, and the subjective reasons given by an officer for detaining an individual have no bearing provided that the detention is objectively proper in light of the totality of the circumstances, *Patterson*, 291 S.W.3d at 123. Further, although Aguilar contends that Officer Aragones testified that he decided to detain Aguilar the moment Aguilar got out of the car, we believe that the trial court could have reasonably determined that the officer did not detain Aguilar until after he interacted with Aguilar outside the truck and asked some questions about where Aguilar was going and where he had been. We also note that Officer Aragones did not provide any indication in his testimony that the traffic stop had been completed (e.g., that the officer had finished the warrant and driver's license checks and issued a citation for speeding) before he asked Aguilar to get out of the vehicle. *Cf. Richardson v. State*, 494 S.W.3d 302, 304 (Tex. App.—Waco 2015, no pet.) (noting that "[i]t is only after this computer check is completed, and the officer knows that this driver has a currently valid license, no outstanding warrants, and the car is not stolen, that the traffic-stop investigation is fully resolved"). On the contrary, the recording from Officer Aragones's dashboard camera shows that Aguilar got out of his car less than one minute after Officer Aragones approached the truck. Further, "as part of [a] temporary detention for a traffic violation, it [i]s permissible for [police officers] to ask [an occupant] to step out of [a] vehicle." *Hatfield v. State*, No. 01-96-00410-CR, 1998 WL 12694, at *2 (Tex. App.—Houston [1st Dist.] Jan. 15, 1998, no pet.) (op., not designated for publication); *see Lilley v. State*, No. 12-14-00100-CR, 2015 WL 1735545, at *3 (Tex. App.—Tyler Apr. 15, 2015, no pet.) (mem. op, not designated for publication) (noting that during traffic stop, "[a]n officer . . . may ask the driver to exit the vehicle"); *Strickland v. State*, 923 S.W.2d 617, 620 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (stating that police officers may ask passenger to exit vehicle during traffic stop).

12

Additionally, there were other passengers in the truck, and the trial court found that Officer Aragones asked Aguilar to get out of the vehicle, in part, to separate Aguilar from the passengers, a finding that is supported by the evidence presented at the suppression hearing and at trial. *See Lerma v. State*, 543 S.W.3d 184, 191 (Tex. Crim. App. 2018) (observing that police officer may order passenger out of car pending completion of traffic stop for safety purposes); *see also Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997) (noting that "danger to an officer is likely to be greater when there are passengers in addition to the driver stopped in the car" and holding that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop").

Further, although Officer Aragones answered affirmatively when asked if he decided "to kind of transition" from the traffic stop to a DWI investigation after Aguilar got out of the truck and indicated that he was going to decide whether to perform a DWI investigation after Aguilar got out, Officer Aragones did not state that he began detaining Aguilar to conduct a DWI investigation the moment that he stepped out of the vehicle. On the contrary, Officer Aragones testified that he wanted Aguilar to get out of the car so that he could talk to Aguilar "for a little bit," to separate him from the passengers, and to determine where the smell of alcohol was coming from.

Moreover, the trial court found that it was during this interaction Officer Aragones detected the odor of alcohol emanating from Aguilar's breath. *Cf. Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (stating that "odor of alcohol on the person" is evidence of intoxication). The trial court also found that during this interaction Aguilar admitted that he had been drinking at the river with his family and had consumed four beers over a period of approximately two and a half hours before leaving the river and driving. *Cf. Kirsch v. State*,

306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (explaining that evidence that would logically raise inference that individual is intoxicated includes, among other things, "any admissions by the defendant concerning what, when, and how much he had been drinking"). Those findings are supported by the evidence presented during the hearing, and Officer Aragones testified that he did not ask Aguilar to submit to any field-sobriety testing until after he asked Aguilar some questions behind the truck.

In light of the preceding and given our standard of review, we conclude that Aguilar was not unreasonably detained when he was asked to briefly step out of the vehicle to talk with Officer Aragones as part of a traffic stop; that Officer Aragones developed reasonable suspicion to believe that Aguilar had committed the offense of driving while intoxicated based on his observing Aguilar speeding and the smell of alcohol coming from Aguilar's breath and on Aguilar's admitting to having consumed multiple alcoholic drinks before driving home at night; and that Officer Aragones's continued detention was supported by reasonable suspicion to believe that Aguilar committed the offense of driving while intoxicated.

When arguing that the trial court should have granted his motion to suppress, Aguilar primarily relies on an opinion by one of our sister courts of appeals, *State v. Evans*, but we find that case to be distinguishable. *See* 500 S.W.3d 528 (Tex. App.—San Antonio 2016, no pet.). In that case, the trial court granted Evans's motion to suppress evidence, and the San Antonio Court of Appeals affirmed. *Id.* at 530. During the suppression hearing, the investigating officer testified that he observed Evans speeding and initiated a traffic stop. *Id.* at 531. Further, the officer explained that he could smell alcohol "emanating from the vehicle," that there were passengers in the car, that he asked Evans to get out of his car but "did not end the encounter and give Evans a speeding ticket because he could smell alcohol on Evans's

14

breath," and that Evans admitted "that he had two whiskey drinks." *Id.* During his cross-examination, the officer admitted that prior to asking Evans to submit to field-sobriety testing, the odor of alcohol from the vehicle "was the only observation he made that Evans was intoxicated." *Id.* at 532. The trial court made several findings of fact and conclusions of law, including determinations that the officer was not credible, that Evans did not display typical indicators of intoxication (e.g., bloodshot eyes or stumbling), and that the officer did not have reasonable suspicion to detain Evans. *Id.* at 533-35.

On appeal, our sister court explained that although Evans admitted to drinking two drinks, "all the other specific and articulable facts in this case point to Evans having the normal use of his physical and mental faculties at the time he was stopped for a traffic violation" as found by the trial court, and our sister court concluded that the officer did not have reasonable suspicion to detain Evans. *Id.* at 537-38. In light of the reasoning from *Evans*, Aguilar contends that the testimony from Officer Aragones setting out his reasons for continuing the detention and indicating that Aguilar did not display many of the typical signs of intoxication should have compelled the trial court to grant the motion to suppress.

Although there are similarities in the testimony from this case and from *Evans*, we note that this Court has previously warned that an appellate "inquiry into reasonable suspicion is 'multi-faceted,'" that "determinations made in other cases" will not always prove helpful as precedent, that courts "should avoid a piecemeal comparison of similar factors in other cases," and that courts should "instead consider the totality of the circumstances in" the cases before them. *Tanner*, 228 S.W.3d at 857. Given the different procedural postures in this case (denying a motion to suppress) and in *Evans* (granting a motion to suppress), that warning would seem especially applicable. *Cf. State v. Binkley*, 541 S.W.3d 923, 933 (Tex. App.—Fort Worth 2018,

15

no pet.) (explaining that deferential standard by which suppression rulings are reviewed could potentially allow appellate court to affirm denial of motion to suppress under same circumstances that it would affirm granting of motion to suppress).

In any event, although Aguilar has highlighted certain similarities in the testimony from *Evans* and from this case, Officer Aragones provided testimony helping to establish reasonable suspicion. For example, Officer Aragones testified that Aguilar was speeding, stated that he had been drinking at the river, admitted that he had consumed more drinks than Evans admitted to, and provided an estimate of how recently he drank those drinks. Additionally, unlike the trial court in *Evans*, the trial court in this case did not find that Aguilar did not display typical cues of intoxication. More importantly, the trial court in *Evans* found the investigating officer's testimony not credible, but the trial court in this case found Officer Aragones's testimony credible. Accordingly, *Evans* is distinguishable from the current case.

For these reasons, we conclude that the trial court did not err when it denied Agilar's motion to suppress. Therefore, we overrule Aguilar's first issue on appeal.

**State's Closing Argument**

In his second issue on appeal, Aguilar asserts that the trial court erred by overruling his objection to an argument that the State made during its closing argument.

An appellate court reviews a trial court's ruling on an objection to allegedly improper jury argument for an abuse of discretion. *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v.*

*Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). "Proper jury argument falls into one of the following categories: '(1) summation of the evidence presented at trial, (2) reasonable deduction drawn from that evidence, (3) answer to the opposing counsel's argument, or (4) a plea for law enforcement.'" *Canada v. State*, 547 S.W.3d 4, 22 (Tex. App.—Austin 2017, no pet.) (quoting *Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000)).

Although the State "may not use closing arguments to present evidence that is outside the record," the State is permitted to draw reasonable inferences from evidence presented at trial. *Kuhn v. State*, 393 S.W.3d 519, 541 (Tex. App.—Austin 2013, pet. ref'd). "Counsel is generally given wide latitude in drawing inferences from evidence as long as they are reasonable, fair, legitimate, and offered in good faith." *Garcia v. State*, No. 05-13-01578-CR, 2015 WL 3451867, at *3 (Tex. App.—Dallas May 29, 2015, pet. ref'd) (mem. op., not designated for publication). "Even when an argument exceeds the permissible bounds of these approved areas, such will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

The relevant portion of the State's closing argument referenced the expert witness for the State, Nick Pierce, and was as follows:

> [State]: What did Mr. Pierce say? Mr. Pierce said that science tells us studies in science say that every single individual has lost their normal use of mental and physical faculties at .08. So, let's talk about that number. First, Mr. Aguilar was coming from the river at 8:45, Memorial Day weekend on a winding road. He admits to four beers. Let's talk about the time frame. Starts drinking at 6:00 according to Mr. Aguilar. Stopped drinking anywhere between 8:00 and 8:30. During his interview he says it was at 8:00 and at the jail he said it was 15

17

minutes prior to the stop. Either one he's drinking from 6:00 to 8:00. He's drinking beer. He ate a hamburger when he first got to the river at 6:00. Presumably that would have been digested by the time he's stopped and processing that alcohol. You heard –

[Aguilar]: Object, Your Honor. We didn't have any testimony on digestive patterns. So, having the jury presume that that food was [di]gested by a certain time is improper.

[State]: I think they can take reasonable deductions from the evidence.

[Trial Court]: Overruled.

[State]: So, he's drinking over the course of several hours. He gets stopped at 8:45. What does Nick Pierce tell you? There's not an average absorption rate, but if you have an empty stomach 99-percent of the alcohol is absorbed in 15 minutes. At most it's an hour.

When urging that the State's argument was improper, Aguilar refers to portions of Pierce's testimony, who testified regarding the absorption and elimination rates of alcohol and how those affect an individual's blood-alcohol concentration. In his unobjected to testimony, Pierce explained that although there is an average rate of elimination for each person that is consistent over a single period of drinking, the rate of absorption for an individual depends on many things, including how much food is in the person's stomach. Pierce explained that absorption and elimination happen at the same time and that an individual's concentration will go down if less alcohol is being absorbed than is being eliminated. Additionally, Pierce agreed that Aguilar's blood-alcohol concentration at the time that he was driving could have been higher, lower, or the same as his concentration at the time of the blood draw depending on the circumstances.

18

Further, Aguilar points to portions of his own closing argument in which he highlighted Pierce's testimony stating that it was possible that Aguilar's blood-alcohol concentration was less than .102 when he was driving, argued that there was no evidence regarding what his blood-alcohol concentration was at the time that he was driving, and urged that it was unreasonable to conclude that he had a higher concentration when he was driving without evidence establishing whether he was still absorbing alcohol at the time of the blood draw.

In light of the preceding, Aguilar characterizes the argument by the State as improper because, according to Aguilar, "the State was allowed to argue to the jury that the evidence showed that [his] absorption of alcohol was over by the time he was stopped and he had to be in the elimination phase, therefore meaning his BAC was over a .08" at the time of the stop even though no evidence was presented regarding how long it would take Aguilar to fully digest the food that he consumed.

As an initial matter, we note that Aguilar objected to the portion of the State's argument mentioning digestion and did not object to any testimony or argument regarding absorption and elimination rates. *See Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014) (stating that "the point of error on appeal must comport with the objection made at trial"). As set out above, the State argued that Aguilar had been drinking on the night in question before driving and that the hamburger that he had eaten would likely but not certainly have been digested by the time of the stop. Aguilar specifically objected to the statement regarding whether the hamburger "[p]resumably" would have been digested by the time of the traffic stop and did not make additional objections to the State's subsequent arguments.

During the trial, Officer Aragones testified that the traffic stop occurred at 8:45 p.m. and that Aguilar stated that he ate a hamburger around 5:00 p.m. or 6:00 p.m. In light of this testimony, we conclude that the State's argument that the hamburger that Aguilar ate hours before the traffic stop was likely to have been digested by the time of the traffic stop was a reasonable deduction from the evidence drawing upon common knowledge.[1] *Cf. Vasquez v. State*, No. 03-11-00545-CR, 2012 WL 3793889, at *3 (Tex. App.—Austin Aug. 29, 2012, pet. ref'd) (mem. op., not designated for publication) (deciding that State's argument was "a reasonable deduction from the evidence and dr[ew] upon common knowledge—that drugs are frequently sold to those with a drug addiction"). Accordingly, we cannot conclude that the trial court abused its discretion by overruling Aguilar's objection.

For these reasons, we overrule Aguilar's second issue on appeal.

**Article 38.23 Instruction**

In his final issue on appeal, Aguilar asserts that the trial court erred by failing to include in the jury charge an instruction under article 38.23 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 38.23. More specifically, Aguilar contends that the trial court should have included his requested instruction because Officer Aragones provided contradictory "answers about the role speed played in his reasonable suspicion determination" to extend the

---

[1] In his reply brief, Aguilar contends that the State asserted in its closing argument "that Aguilar had completely digested his food" and that this was scientifically inaccurate, referring to an article as support for his assertion that the full process of digestion takes longer than a few hours. However, we do not read the State's argument as definitively as Aguilar does. In its closing argument, the State asserted that the hamburger that Aguilar ate hours before was "[p]resumably" digested before he was pulled over but did not assert that the hamburger would definitely have been completely digested. Accordingly, the State's argument would seem to be a common-sense deduction that food consumed hours earlier is more digested than food recently consumed.

20

traffic stop for an investigation of whether Aguilar had committed the offense of driving while intoxicated. In light of this allegedly conflicting testimony, Aguilar asserts that an instruction was necessary because "[i]f the jury believed that [Officer] Aragones did not use speed as a clue of intoxication and reason to detain [him], the jury could decide all evidence obtained thereafter was the result of an illegal detention and disregard it." Moreover, Aguilar asserts that if this Court determines that Officer Aragones "utilized" Aguilar's "speeding infraction to help justify his continued detention . . . , then [Aguilar] was justified in requesting a 38.23 instruction based on [Officer] Aragones' changing answers about the role speed played in his reasonable suspicion determination" because the testimony "raised an affirmatively contested fact issue for the jury to consider in determining whether [Aguilar] was illegally detained."

When reviewing an alleged jury-charge error, an appellate court first determines whether an error exists. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If the court determines that there was an error, it then decides whether the error resulted in harm sufficient to warrant a reversal. *Kirsch*, 357 S.W.3d at 649; *Ngo*, 175 S.W.3d at 743. If no objection is made to a jury charge, the appellate court will only reverse if the jury-charge error "is so egregious and created such harm that [the defendant] 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see also Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013) (setting out what constitutes egregious harm). In contrast, when an objection is made, the record must show only "*some* harm." *Almanza*, 686 S.W.2d at 171.

21

Article 38.23 reads, in relevant part, as follows:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex. Code Crim. Proc. art. 38.23.

"To be entitled to an Article 38.23(a) instruction, . . . the defendant must show that (1) an issue of historical fact was raised in front of the jury; (2) the fact was contested by affirmative evidence at trial; and (3) the fact is material to the constitutional or statutory violation that the defendant has identified as rendering the particular evidence inadmissible." *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012). "Where the issue raised by the evidence at trial does *not* involve controverted historical facts, but only the proper application of the law to undisputed facts, that issue is properly left to the determination of the trial court." *Id.*

"A defendant's right to the submission of jury instructions under Article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State*, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007); *see Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008) (explaining that "Article 38.23 requires a jury instruction only if there is a genuine dispute about a material fact"). "The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct." *Madden*, 242 S.W.3d at 511. "[I]f other facts, not in dispute, are sufficient

22

to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence." *Id.* at 510. Additionally, "[t]o raise a disputed fact issue warranting an Article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question." *Id.* at 513. "[I]f there is no disputed factual issue . . . [,] the legality of the conduct is determined by the trial judge alone, as a question of law." *Oursbourn*, 259 S.W.3d at 177-78. "Whether reasonable suspicion is present is a question of law for the trial court when there is no dispute concerning the existence of the underlying historical facts from which that determination is made." *Mills v. State*, 296 S.W.3d 843, 845 (Tex. App.—Austin 2009, pet. ref'd). "However, if there is a genuine dispute about the existence of one or more of these historical facts and such a fact's existence is material to the stop's legality, article 38.23(a) entitles the defendant to have the fact's existence determined by the jury through the submission of an instruction." *Id.* at 846.

In this case, "we perceive no material *factual* dispute . . . , only a dispute . . . with respect to the legal significance of what are, in essence, undisputed facts." *See Robinson*, 377 S.W.3d at 720. Even if Officer Aragones provided conflicting testimony regarding what role his observing Aguilar commit the offense of speeding had on his subsequent decision to detain Aguilar to investigate whether he also committed the offense of driving while intoxicated, there was no dispute that Aguilar committed the traffic offense and that Officer Aragones observed that offense. A disagreement about "the legal consequences of" the traffic offense is "for the trial court to arbitrate, according to the law, not for the jury to determine as if it were an ambiguous or contested question of historical fact." *See id.* "Only the judge is authorized to determine the legal significance of the material facts in the case and how they affect the ultimate conclusion regarding the existence . . . of . . . reasonable suspicion." *Id.* at 722.

23

Because the dispute at issue was not about whether Aguilar committed a traffic offense and instead pertained to "the legal significance" of the commission of the offense, the question of whether Officer Aragones had reasonable suspicion was "a question of law, not fact, and the admissibility of any evidence . . . obtained as a result of the traffic stop does not depend on the reasonableness of" Officer Aragones's belief that the traffic offense provided a basis upon which to further detain Aguilar. *See id.*; *see also Madden*, 242 S.W.3d at 511 (observing that "the trial judge . . . decides what quality and quantum of facts are necessary to establish 'reasonable suspicion'" and that it is "[o]nly if one or more of those necessary facts are disputed does the judge ask the jury to decide whether the officer's belief in those facts was reasonable"); *Ricks v. State*, Nos. 03-16-00304—00305-CR, 2018 WL 1514536, at *2 (Tex. App.—Austin Mar. 28, 2018, no pet.) (mem. op., not designated for publication) (overruling issue asserting that instruction under article 38.23 should have been given to allow jury to decide if "continued detention" was unreasonable and noting that issue "was merely a question about the proper application of the law to the undisputed facts in evidence, which was properly left to the determination of the trial court").

Moreover, even if there was a dispute regarding a historical fact, the fact would need to be material in order to warrant the inclusion of a jury instruction under article 38.23. *See Robinson*, 377 S.W.3d at 719. As set out previously, evidence beyond Officer Aragones's observation of Aguilar committing a traffic stop justified the detention at issue. For example, evidence was presented that Officer Aragones smelled alcohol on Aguilar's breath after he got out of the truck and that Aguilar admitted to drinking multiple beers while he was at the river and before driving. These additional factors provided an objective basis for Officer Aragones to reasonably conclude that continued detention was appropriate regardless of whether the officer

24

also considered Aguilar's speeding.  *See Garcia*, 43 S.W.3d at 530; *Davis*, 947 S.W.2d at 243; *see also Kirsch*, 306 S.W.3d at 745 (stating that admissions regarding any amount defendant had been drinking could serve as basis for inferring that individual is intoxicated); *Shakespeare v. State*, No. 03-00-00707-CR, 2001 WL 421003, at *3 (Tex. App.—Austin Apr. 26, 2001, no pet.) (op., not designated for publication) (commenting that officer detected alcohol on defendant's breath when deciding that reasonable suspicion existed).  Accordingly, the allegedly disputed fact was not essential to deciding the lawfulness of the continued detention because other undisputed facts were sufficient to support the lawfulness of the detention.  *See Madden*, 242 S.W.3d at 510, 511.

For these reasons, we conclude that Aguilar was not entitled to an instruction under article 38.23 and, therefore, overrule Aguilar's final issue on appeal.

## CONCLUSION

Having overruled all of Aguilar's issues on appeal, we affirm the trial court's judgment of conviction.

_____

Thomas J. Baker, Justice

Before Chief Justice Rose, Justices Baker and Triana

Affirmed

Filed:   October 7, 2020

Do Not Publish

25